**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM E. ZACK, SR. and | ) | **Bankruptcy No. 19-70672-JAD** |
| KIMBERLY S. ZACK, | ) | |
| | ) | **Chapter 7** |
| Debtors. | ) | |
| _____ X | | |
| | ) | |
| WILLIAM E. ZACK, SR. and | ) | **Adversary No. 20-07010-JAD** |
| KIMBERLY S. ZACK, | ) | |
| | ) | **Related to ECF No. 37** |
| Plaintiffs, | ) | |
| | ) | |
| - v - | ) | |
| | ) | |
| TRANSPORTATION ALLIANCE | ) | |
| BANK d/b/a TAB BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ X | | |

## MEMORANDUM OPINION

This matter is a core proceeding over which this Court has the requisite subject-matter jurisdiction to enter final judgment pursuant to 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), 157(b)(2)(G), 157(b)(2)(O) and 1334(b).

This Adversary Proceeding includes a cause of action by William E. Zack, Sr. and Kimberly S. Zack (collectively, the "Debtors") against Transportation Alliance Bank d/b/a TAB Bank ("TAB Bank") for damages resulting from an alleged violation of the automatic stay.[1] According to the Complaint, the Debtors

---

[1] The Complaint filed by the Debtors was filed in the Court of Common Pleas of Indiana County, Pennsylvania, and was removed to this Court by way of Notice of Removal filed by TAB Bank

<span style="text-align:right">continue...</span>

00031038

contend that after the commencement of the Debtors' bankruptcy, TAB Bank violated the automatic stay by placing phone calls and directing emails to the Debtors in an effort to collect a pre-petition commercial loan obligation due TAB Bank.

The procedural posture through which this dispute is ripe for adjudication is by way of a Motion for Summary Judgment filed by TAB Bank.  By the Motion for Summary Judgment, TAB Bank asserts that its post bankruptcy debt collection activities were directed against KBZ Transport, LLC, which is an affiliate of the Debtors.  Because the collection activity was directed against a third-party, TAB Bank argues that its collection activity cannot constitute "actions against" the Debtors which would be subject to the automatic stay of 11 U.S.C. § 362(a).

According to TAB Bank, no evidence has been produced by the Debtors which refutes the evidence indicating that TAB Bank's efforts to collect a debt was directed to a non-debtor third party. Accordingly, TAB Bank contends that no genuine issue of material fact exists with respect to TAB Bank's collection efforts against KBZ Transport, LLC and therefore TAB Bank requests that summary judgement be entered in its favor dismissing this Adversary Proceeding with

---

[1]...continue

on April 7, 2020.  See ECF 1.  Count I of the Complaint filed by the Debtors contains an additional cause of action under Pennsylvania's Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection Law.  In their papers and at the hearing on this matter, the Debtors acknowledged that these claims are not viable and have not opposed their dismissal.  Therefore, the only claim addressed by this Memorandum Opinion is the cause of action for violation of the automatic stay contained in Count II of the Complaint.

prejudice.

For the reasons set forth below, the Court finds that there is no genuine dispute of material fact that TAB Bank's debt collection efforts were directed to a non-debtor third party. For this reason, summary judgment shall be entered dismissing this Adversary Proceeding because no violation of the automatic stay has been demonstrated by the Debtors.

## I.

Summary judgment should be granted whenever "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." <u>See</u> Fed. R. Civ. P. 56(a); <u>see also</u> <u>Willis v. UPMC Children's Hosp. of Pittsburgh</u>, 808 F.3d 638, 643 (3d Cir. 2015).

A genuine issue of material fact exists "only if there is a sufficient evidentiary basis on which a reasonable [trier of fact] could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." <u>Kaucher v. Cty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The party seeking summary judgment bears the burden of demonstrating that "the evidentiary record presents no genuine issue of material fact." <u>Willis</u>, 808 F.3d at 643.

To avoid summary judgment, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on [the] essential

elements of their case for which they have the burden of proof." Id. (citing Celotex

Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  A

failure of proof regarding any essential element in the nonmoving party's case

necessitates judgment as a matter of law and renders all other facts immaterial.

Celotex, 477 U.S. at 323, 106 S.Ct. 2548.  Reviewing the record as a whole, the

Court is to "draw all reasonable inferences in favor of the non-moving party and

will not weigh the evidence or make credibility determinations." Parkell v.

Danberg, 833 F.3d 313, 323 (3d Cir. 2016) (quoting Armour v. Cty. of Beaver, Pa.,

271 F.3d 417, 420 (3d Cir. 2001)).

## II.

The materials facts of this case are set forth in TAB Bank's Concise

Statement of Material Facts in Support of its Motion for Summary Judgment (the

"Concise Statement"). See ECF 39.[2]

The Debtors did not respond to TAB Bank's Concise Statement; nor did the

Debtors file their own separate counter-statement of material facts.  The Local

Rules of this Court provide that not only must a moving party file a concise

statement of material facts, the non-moving party has the affirmative duty to

specifically answer the movant's concise statement.  When the opposing party fails

to respond, the facts set forth in the movant's concise statement are deemed

---

[2] Unless otherwise specifically noted, citations to "ECF __" shall refer to the electronic case file
of Adversary No. 20-07010-JAD.

admitted. See W.PA.LBR 7056-1(d); see also Conboy v. U.S. Small Bus. Admin. et al., Civil Action No. 3:18-224, 2020 WL 1244352, at *3 (M.D. Pa. Mar. 16, 2020)(facts set forth in concise statement admitted when party failed to respond).

The Debtors in the instant case, having not answered TAB Bank's Concise Statement, are deemed to have admitted each of the material facts put forth by TAB Bank. With that being said, the material facts are not overly complicated and reflect the following:

1.     The instant bankruptcy case was filed by the Debtors on October 29, 2019. See Voluntary Petition, Bankruptcy No. 19-70672-JAD, ECF 1.

2.     Debtor William E. Zack, Sr. ("Mr. Zack") is the principal owner of an entity, KBZ Transport, LLC ("KBZ"). See Concise Statement at para. 10.

3.     KBZ was in the transport business and, in August of 2017, obtained a commercial loan from TAB Bank in the amount of $56,211 to finance the purchase a 2013 Kenworth Tractor. Id. at paras. 1 through 6.

4.     In connection with the loan documentation, Mr. Zack submitted a loan application to TAB Bank identifying that Mr. Zack was the principal of KBZ. The loan application also provided the mailing address, phone number, and email address for KBZ, which also was Mr. Zack's home address, personal cell phone number, and his personal email address (collectively, the "Contact Information"). Id. at paras. 9 through 15.

5.     At no time did KBZ ever advise TAB Bank that the Contact Information was incorrect or that TAB Bank should not use the Contact Information when contacting KBZ. See, e.g., id. at 16

6.     Mr. Zack was also a guarantor of the loan made by TAB Bank to KBZ. Id. at para. 4.

7.     Beginning on or about July of 2019, KBZ defaulted on its loan from

TAB Bank. Id. at 17.  Thereafter, on or around October of 2019,[3] KBZ repossessed the Kenworth Tractor, and in December of 2019 it sold the vehicle and applied the proceeds to the outstanding loan balance leaving a deficiency of $11,706.45 due TAB Bank. Id. at 18-20.

8.      After the loan defaulted, through time of repossession and thereafter, TAB Bank placed various phone calls, letters, and emails to KBZ. Id at para. 21.

9.      Germane to the automatic stay, after the commencement of the Debtors' bankruptcy case, TAB Bank contacted KBZ via email to Mr. Zack on seven occasions on October 29, 2019, November 5, 2019, November 12, 2019, December 3, 2019, December 10, 2019, December 17, 2019 and December 24, 2019.  The email address utilized by TAB Bank was the email address provided by Mr. Zack on the KBZ loan application. Id. at para. 22.[4]

10.     With respect to phone calls, TAB Bank made several phone calls to KBZ, but only one phone call was made on or after the petition date.[5] That lone phone call was made on October 29, 2019 (the petition date) at telephone number XXX-XXX-8347,[6] which is the phone

---

[3] Comparing the dates in the Concise Statement with the various account notes indicates that the repossession of the vehicle may have occurred as late as November.  This variance is immaterial for purposes of this Memorandum Opinion.

[4] The emails by TAB Bank appear to be form emails, and based on the Court's experience they are not overly aggressive.  The emails state, in pertinent part, that "You're receiving this email because your loan(s) are currently past due," "[p]lease contact us at your earliest convenience . . . to remedy the delinquency," "[p]lease keep in mind that your delinquency determines . . . [l]ate fees assessed... 18% Default Interest Rate - Until the loan is caught up," and "[r]epossession may be ordered for loans that are severely past due."  To be clear, just because the emails are automatic or are not overly aggressive, does not mean that had the emails been targeted to the Debtors individually there would be no technical violation of the automatic stay. See In re Wingard, 382 B.R. 892 (Bankr. W.D. Pa. 2008)(rejecting the "computer did it defense" when a creditor sends post bankruptcy dunning letters in violation of the automatic stay).

[5] Prior to the bankruptcy filing date, TAB Bank made calls to KBZ at numbers set forth in the Contact Information.  Prior to the bankruptcy, TAB Bank called KBZ at a number they obtained through "skip tracing." From and after the bankruptcy petition date, there has been no evidence submitted by any party reflecting a phone call or phone calls to any other number than XXX-XXX-8347, which was dialed by TAB Bank once.

[6] The full phone number has been redacted by the Court.  The Debtors also allege that a letter
                                                                                        continue...

number provided by Mr. Zack in KBZ's loan application to TAB Bank. See Exhibit K (revised), ECF 43.[7]

11.   All of the post-bankruptcy communications by TAB Bank were directed to addresses or phone numbers reflected in the Contact Information provided by KBZ, and TAB Bank has produced a sworn affidavit stating that it was communicating with KBZ in connection with KBZ's obligations, and not the Debtors individually. See Concise Statement at paras. 26-27 and Exhibit A (Declaration of Benjamin J. Kotter).

## III.

A fundamental protection afforded by the Bankruptcy Code is the "automatic stay," which originates by application of 11 U.S.C. § 362(a). In re University Medical Center, 973 F.2d 1065, 1074 (3d Cir.1992); In re Williams, 371 B.R. 102 (Bankr.E.D.Pa.2007).

The "automatic stay" is a statutory injunction arising upon the commencement of the case; and the injunction is "automatic" in that it arises without the necessity of a formal court order.

The automatic stay "is designed to effect an immediate freeze of the *status*

---

[6]...continue

was sent by TAB Bank to the Debtors on or about November 15, 2019.  However, the letter has not been provided by the Debtors and the sworn affidavit submitted by TAB Bank includes a list of all communications by and between TAB Bank with respect to the loan (which does not contain such a letter).

[7] ECF 43 is a corrected Exhibit K filed by TAB Bank, which is the call notes memorializing communications between TAB Bank and KBZ.  The notes also reflect a call from Mr. Zack to TAB Bank on November 19, 2019, indicating that Mr Zack had been requesting TAB Bank to pick up the Kenworth Tractor since August, 2019.  These contemporaneous notes strongly suggest that repossession of the Kenworth Tractor did not occur until sometime on or after November 19, 2019.

*quo* . . . and protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others." Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 585 (9th Cir.1993) (citing Interstate Commerce Comm'n v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir.1991), vacated, 983 F.2d 1122 (1st Cir.1993) and Treasurer of Snohomish Cty., Wash. v. Seattle-First Nat'l Bank (In re Glasply Marine Indus.), 971 F.2d 391, 394–95 (9th Cir.1992)); see also In re University Medical Center, 973 F.2d at 1084.

The automatic stay is an important and powerful bankruptcy remedy in that it precludes certain post-petition actions of creditors, including the efforts of creditors to "collect, assess, or recover a claim against the debtor that arose before the commencement" of the case. See   11 U.S.C. §§ 362(a)(6).  As stated in the legislative history of Section 362(a) of the Bankruptcy Code:

> [The stay] gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits a debtor to attempt a repayment or reorganization plan, or simply be relieved of the financial pressures that drove him into bankruptcy.

See  H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6296–97.

The importance of the automatic stay in our system of bankruptcy is reflected in the provisions of Section 362(k)(1) of the Bankruptcy Code. This aspect of the statute holds creditors accountable for injuries caused by a willful violation

of the automatic stay. Section 362(k)(1) of the Bankruptcy Code is remarkably simple, and states in pertinent part as follows:

> [A]n individual injured by any willful violation of a stay provided by this section [i.e., Section 362(a)] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).

## IV.

In light of the statutory regime set forth above, the Debtors may only seek damages against TAB Bank if the Debtors can demonstrate in the first instance that TAB Bank violated the automatic stay.

As reflected in the Concise Statement, TAB Bank's post-bankruptcy collection efforts were directed to KBZ.  The law, however, provides that KBZ cannot avail itself of the protections of the automatic stay absent it filing its own bankruptcy petition. See e.g., In re Calhoun 312 B.R. 380, 382-85 (Bankr. N.D. Iowa 2004)(bankruptcy filed by member of LLC does not result in LLC availing itself of the protections of the Bankruptcy Code, including the automatic stay).

That TAB Bank's collection activities against KBZ do not implicate the automatic stay is reflected in the plain language of 11 U.S.C. § 362(a), which enjoins acts of creditors to "collect, assess, or recover a claim *against the debtor* that arose before the commencement" of the case. See   11 U.S.C. §§ 362(a)(6)(emphasis added).

Cases decided in this area hold that formal distinctions between debtor-affiliated entities are maintained when applying the automatic stay. Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1205 (3d Cir. 1991).

For instance, in circumstances similar to what is before this Court, the Third Circuit Court of Appeals has held that a "proceeding against a non-bankrupt corporation is not automatically stayed by the bankruptcy of its principal." Maritime Elec. Co., Inc., 959 F.3d at 1205  (citing Marcus, Stowell & Beye v. Jefferson Investment Corp., 797 F.2d 227, 230 n. 4 (5th Cir. 1986) and Personal Designs, Inc. v. Guymar, Inc., 80 B.R. 29, 30 (E.D. Pa. 1987)); see also Philadelphia Gold Corp. v. Fauzio (In re Philadelphia Gold), 56 B.R. 87, 89 (Bankr. E.D. Pa. 1985)(citing Nevada National Bank v. Casgul of Nevada, Inc. (In re Casgul of Nevada, Inc.), 22 B.R. 65, 66 (Bankr. 9th Cir. 1982)); Northwood Flavors, Inc. v. Dollar Bankr (In re Northwood Flavors, Inc.), 202 B.R. 63, 66 (Bankr. W.D. Pa. 1996)(the automatic stay is "not available . . . to other parties who themselves are not in bankruptcy, even if they are in similar legal or factual nexus with the debtor"); and In re Loughnane, 28 B.R. 940, 941 (Bankr. D. Colo. 1983)(IRS may proceed against corporation wholly owned by the debtor).

Accordingly, since there is no genuine issue of material fact that the activities of TAB Bank were directed against KBZ and not Mr. Zack personally, this Court holds that no automatic stay violation occurred and the Complaint

must be dismissed.

## V.

In rendering its decision today, the Court recognizes that the Contact Information for KBZ was provided by Mr. Zack to TAB Bank and that TAB Bank had no information indicating that the emails, phone numbers, and mailing addresses were incorrect or were not where KBZ may be contacted.

The Debtors, however, ask that the Court ignore these facts, and infer from the circumstances that TAB Bank's collection efforts were directed against the Debtors.  In this regard, Debtors argue that the Court should infer that the collection activities of TAB Bank were directed against the Debtors personally because Mr. Zack guaranteed KBZ's debt and that, after the repossession and sale of the Kenworth Tractor, KBZ allegedly had no remaining assets to satisfy the deficiency due TAB Bank.

As to the former, the guarantee, none of the emails and written correspondence which is filed of record reflects statements to the effect that TAB Bank was calling the "guaranty."  Indeed, the guaranty is mentioned nowhere in any of the correspondence.  Rather, the communications reflect that TAB Bank was enforcing the "loan" and it is the "Business Loan Agreement" that is signed by Mr. Zack on behalf of KBZ.

As to the latter, the suggestion that KBZ had no assets to satisfy the deficiency, the Debtors have not produced any evidence indicating that TAB Bank

knew that KBZ was insolvent, out of business, or otherwise lacked the ability to pay the deficiency.  In fact, Mr. Zack testified at his deposition that he never on provided TAB Bank with any current financial statements, asset information, or other financial documentation reflecting that KBZ had no wherewithal to pay any deficiency due TAB Bank. <u>See</u> Transcript of October 2, 2020 Deposition of William E. Zack ("<u>Zack Tr.</u>") at p. 115, lines 3-14; Tr. At p. 120, lines 16-18.

In essence, Mr. Zack assumes TAB Bank knew KBZ's true financial condition because, as Mr. Zack testified at his deposition, "I couldn't pay it because I had no money." Zack Tr. at p. 115, lines 13-14.  Conjecture, however, is not evidence, and is not sufficient to overcome TAB Bank's Motion for Summary Judgment.  <u>Beardsall v. CVS Pharmacy, Inc.</u>, 953 F.3d 969 (7th Cir. 2020)(Summary judgment is the proverbial " 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events")(quoting <u>Johnson v. Cambridge Indus., Inc.</u>, 325 F.3d 892, 901 (7th Cir. 2003)).


*[Remainder of Page Intentionally Left Blank]*

## VI.

For all of the reasons set forth above, the Court finds that there is no genuine dispute of material fact that TAB Bank's debt collection efforts were directed to a non-debtor third party.  For this reason, summary judgment shall be entered dismissing this Adversary Proceeding because no violation of the automatic stay has been demonstrated by the Debtors.  An appropriate Order shall be issued.

Dated: December 21, 2020

_____
The Honorable Jeffery A. Deller
United States Bankruptcy Judge

cc:   Michael Vaporis, Esquire, counsel to the Plaintiffs
      Justin Tuskan, Esquire, counsel to the Defendant

FILED
12/21/20 4:19 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

00031038

-13-